<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE KATIROLL COMPANY, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 10-3620 (GEB) |
| KATI ROLL AND PLATTERS, INC. AND NIRAJ JIVANI, | ) **MEMORANDUM OPINION** |
| Defendants. | ) |

**<u>BROWN, Chief Judge</u>**

This matter comes before the Court on a motion by Plaintiff to strike Defendants' affirmative defence of unclean hands. (D.E. 103). Defendants have opposed the motion. The Court has considered the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant the motion.

**I.   BACKGROUND**

This is a trademark infringement case involving two restaurants that sell a similar type of food called katirolls. Plaintiffs originally brought this action on March 3, 2010 in the Southern District of New York alleging, among other things, infringement of their distinctive trade dress. (Compl.; D.E. 1). The Southern District of New York transferred the case to New Jersey based on a lack of personal jurisdiction. (Memorandum Order dated July 9, 2010; D.E. 31).

Shortly after the transfer, this Court granted a motion for a preliminary injunction after a two-day evidentiary hearing. After setting forth its findings of fact and conclusions of law, this Court found that Plaintiff was entitled to a preliminary injunction on their trade dress claims but found that it had not carried its burden on infringement of the trademark. (D.E. 72, 73).

This motion focuses on a letter that Plaintiffs sent between the filing of the lawsuit and its transfer to New Jersey. Plaintiff's counsel sent the letter by email to the Vice President and General Counsel of the social networking website "Facebook." The letter requested that Facebook preserve the image that Mr. Jivani used to make several posts on the site as cache or in backups. The letter informed Facebook that Plaintiff believed that the site was hosting images that infringed its service mark and trade dress, these images had been put up by Mr. Jivani on several group sites that he or his agents had created on Facebook. The letter then went on to ask Facebook to "take-down" several of Mr. Jivani's infringing websites and preserve them for the purposes of discovery. (May 21, 2010, Letter; D.E. 94, Ex. E). This was the sum-total of the letter.

Defendants allege in their Answer that this was evidence of Plaintiff's unclean hands, which would bar their recovery for trademark infringement. This allegation has no merit.

## II. DISCUSSION

### A. Standard of Review

While the standard for striking a defendant's affirmative defense in this district is somewhat unclear, it would make no difference in this case. The Court applies the most stringent approach taken, with strong support, by Judge Simandle in *FTC v. Hope Now Modifications*, *LLC et al.*, No. 09-1204, 2011 U.S. Dist Lexis 24657 (D.N.J. March 10, 2011) (finding that the heightened pleading standard of *Iqbal* does not apply to affirmative defenses).

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense . . . on motion made by a party . . . within 21 days after being served with the pleading." While granting such a motion is disfavored, a defense may be stricken to save time and expense "where the challenged material is redundant, immaterial, impertinent, or scandalous . . . . [and] the presence of the surplusage will prejudice the adverse party." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009). In sum, "an affirmative defense can be stricken only if the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts." *Hope Now*, 2011 U.S. Dist. Lexis 24657 (D.N.J. March 10, 2011) (quoting *Tonka Corp. v. Rose Art Indus., Inc*., 836 F. Supp. 200, 217 (D.N.J. 1993)).

### B. Application

The allegation here could not possibly prevent recovery under any pleaded or inferable set of facts, and its continuation will prejudice Plaintiffs through substantial waste of time. This Court will not allow such a defense to go forward. The unclean hands defense alleged here is very narrow, it states:

> The plaintiff and its attorneys have unclean hands by virtue of its May 21, 2010 correspondence to Facebook in violation of the Digital Millennium Act, 17 U.S.C. § 512(c)(3).

(Amended Answer at ¶ 12).

#### 1. *The unclean hands defense*

Unclean hands is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S. Ct. 993, 89 L. Ed. 1381 (1945); *Highmark*, 276 F.3d at 174. The defense of unclean hands is applicable to all claims brought under the

3

Lanham Act. *Highmark, Inc. v. UPMC Health Plan*, 276 F.3d 160, 174 (3d Cir. 2001); *see also* 15 U.S.C. § 1117(a) (even money damages in the Lanham Act are subject to the principles of equity). However, "in a trademark infringement action, 'the court must show solicitude for the public in evaluating an unclean hands defense. Because a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands.'" *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 129 (3d Cir. 2004). Courts reject claims based on unclean hands "only for such violations of conscience as in some measure affect the equitable relations between the parties [relative to the relief sought]." *Highmark*, 276 F.3d at 174 (quotation omitted). In other words, "[t]he nexus between the misconduct and the claim must be close." *Id.*

### 2. *Application*

Sending a letter requesting that Facebook take down sites that allegedly infringe its registered Service Mark and trade dress is not improper let alone "egregious." The Court's finding on preliminary injunction that Plaintiff was likely to succeed on the merits of the trade-dress claim shows that these assertions were not baseless. The assertion of potentially valid rights is not unclean hands, but is a rightful exercise of those rights. *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir. 1983) (citing *Maatschappij Tot Exploitatie Van Rademaker's Koniklije Cacao & Chocoladefradriken v. Kosloff*, 45 F.2d 94, 96 (2d Cir. 1930)). The fact that Facebook believed that Plaintiffs' letter was not in conformance with the Digital Millennium Copyright Act's ("DMCA") take down provisions is irrelevant. Plaintiffs' letter never threatened suit, or asserted that the letter was being filed as a DMCA copyright notice nor

did it ever cite any copyright rights– it only mentioned Service Marks and trade dress – the very claims that Plaintiffs may validly assert.[1]

Defendants have cited no authority that the assertion of potentially valid rights to third parties in cease and desist letters is an act of unclean hands. Nor could they. *See Warner Bros.*, 724 F.2d 334 (cease and desist letter did not give rise to unclean hands where the rights asserted were not wholly baseless). Further, the request here hardly amounts to a cease and desist letter; rather, it reads as precatory letter requesting Facebook take down the content. Finally, even if the letter were an improper assertion of rights under the DMCA, such an assertion is not sufficiently related to the action at issue to bar a trademark claim based on unclean hands. *See id.*; *Highmark*, 276 F.3d at 174.

Finally, Defendants' suggestion that opposing counsel's failure to assist Defendants in complying with the preliminary injunction order constitutes unclean hands must fail for three reasons. First, Plaintiffs' conduct cannot be said to be sufficiently "egregious" to constitute unclean hands because Plaintiffs had no affirmative burden to comply with the injunction—it was Defendants who were so ordered. Second, Defendants cite no authority that this sort of conduct is sufficiently related to the claims as to constitute unclean hands; indeed, Defendants' Answer itself designates this conduct as "fail[ure] to mitigate its damages," not as unclean hands. (Amended Answer at ¶11). Such is the proper pleading for this alleged conduct. Third, the unclean hands defense in Defendants' Answer is limited by its very terms to the May 21, 2010 correspondence and does not include any other conduct.

---

[1] The DMCA was meant to reduce the numerous cases filed by copyright owners against websites who hosted user-uploaded content that often infringes a copyright. The compromise Congress struck in the DMCA is that hosting sites are not liable for copyright infringement so long as they promptly take down infringing content when properly noticed by the copyright owner. 17 U.S.C. § 512(c)(1).

Consequently, the Court finds that "the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts" based on the pleading. *See Tonka Corp.*, 836 F. Supp. at 217. The Court strikes this defense from the Answer. However, the Court is mindful that Plaintiffs may have committed other conduct, not present in Defendants' narrow Answer, that might prevent recovery based on unclean hands. As such, the Court strikes the unclean hands defense without prejudice to its reassertion based on facts other than the May 21, 2010 correspondence with Facebook.

### III. CONCLUSION

For the foregoing reasons the Court strikes the unclean hands defense without prejudice to its reassertion based on facts other than the May 21, 2010 correspondence with Facebook.

Dated: June 8, 2011

       /s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.