NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THE KATIROLL COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 10-3620 (GEB) |
| KATI ROLL AND PLATTERS, INC. AND NIRAJ JIVANI, | ) ) ) | **MEMORANDUM OPINION** |
| Defendants. | ) ) ) | |

**BROWN, Chief Judge**

      This matter comes before the Court on a motion by Plaintiff for spoliation sanctions and to compel discovery (Doc. No. 108).  The Court has considered the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, that motion is denied in part and granted in part.

**I.    BACKGROUND**

      This is a trademark infringement case involving two restaurants that sell a similar type of food called katirolls.  Plaintiff originally brought this action on March 3, 2010, in the Southern District of New York alleging, among other things, infringement of their distinctive trade dress.  (Compl.; Doc. No. 1).  The Southern District of New York transferred the case to New Jersey based on a lack of personal jurisdiction.  (Memorandum Order dated July 9, 2010; Doc. No. 31).

      Shortly after the transfer, this Court granted a motion for a preliminary injunction after a two-day evidentiary hearing.  After setting forth its findings of fact and conclusions of law, this

1

Court found that Plaintiff was entitled to a preliminary injunction on its trade dress claims but found that it had not carried its burden on infringement of the trademark. (Doc. Nos. 72, 73).

This motion focuses on the discovery positions of the parties. Particularly, this motion focuses on whether Defendants' fact discovery has been late forthcoming and whether Defendants purposely and deliberately destroyed important discoverable information. Fact discovery in this case is ongoing and does not close until September 30, 2011. (Doc. No. 110).

## II.     SPOILATION SANCTIONS AND MOTION TO COMPEL

### A.     Standard of Review

Parties to litigation often are required to preserve litigation evidence. This duty "arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). If the party does not so preserve the evidence, they are said to have spoliated that evidence, which can give rise to sanctions. "In determining whether spoilation sanctions are appropriate, the two key considerations are the 'degree of fault of the party who altered or destroyed the evidence' and 'the degree of prejudice suffered by the opposing party.'" *Id.* (quoting *Schmidt v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

Sanctions for spoilation include: "dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." *Id.* A spoliation inference is the mildest sanction and "permits a jury to draw an adverse inference that the spoliated evidence might or would have been unfavorable to the position of the offending party." *Veloso v. Western Bedding Supply Co.*,

*Inc.*, 281 F.Supp.2d 743, 746 (D.N.J. 2003) (internal quotation marks omitted).  To qualify for a spoliation inference, the movant must show at least four things: "First, it is essential that the evidence in question be within the party's control.  Second, it must appear that there has been actual suppression or withholding of the evidence.  Third, the evidence destroyed or withheld was relevant to claims or defenses.  And fourth, it was reasonably foreseeable that the evidence would later be discoverable."  *Mosaid Tech., Inc. v. Samsung Elec. Co., Ltd*., 348 F.Supp.2d 332, 336 (D.N.J. 2004).

There is a split in this district's jurisprudence as to the fault required to support the second factor – the suppression or withholding of the evidence.  Some courts have required that spoliation to be the result of intentional conduct before giving an adverse inference instruction.  *Veloso v. Western Bedding Supply Co.*, 281 F.Supp.2d, 743, 746-49 (D.N.J. 2003); *Costello v. City of Brigantine*, No. 99-4072, 2001 WL 732402, at *26 (D.N.J. Jun. 28, 2001).  Others have held that the inference is justified where the party possessing the evidence destroyed it negligently.  *Kounelis*, 529 F. Supp. 2d at 518 (appropriate where either negligently or intentionally destroyed, but balancing the degree of fault with the prejudice produced); *Mosaid Techn., Inc. v. Samsung,* 348 F.Supp.2d 332, 337-38 (D.N.J. 2004); *Scott v. IBM Corp.,* 196 F.R.D. 233, 249 (D.N.J. 2000) (finding that spoliations might be appropriate where there was nothing to indicate documents were intentionally destroyed).

This Court concludes that the best rule is to use the amount of prejudice to the opposing party to help to determine the degree of fault required:  Where there is substantial prejudice to the opposing party, negligence may be sufficient to warrant a spoliation inference.  Where there is minimal prejudice to the opposing party, intentional conduct is required.

**B.     Application**

The Plaintiff complains to this Court about a series of discovery abuses that allegedly require a spoliation inference. However, the Court concludes in its discretion that, as to some conduct, the prejudice to Plaintiff of the alleged destruction of evidence is minimal and that it was partially at fault. Thus, no spoliation inference is appropriate. In other instances, the Court lacks sufficient information to make a determination but is troubled by aspects of Defendants' failed disclosures. While the Court finds it is premature to enter a spoliation inference in these instances, the Court is open to spoliation sanctions in the future and grants the motion to compel in some instances. In still other instances, the Court determines that a spoliation instruction is warranted.

*1.     The Appearance of the Restaurant*

This Court's February 1, 2011 order gave Defendants twenty days to change the infringing color of the restaurant from orange to another color. (Doc. No. 73). Thereafter, Defendants' counsel agreed that Defendants would leave the restaurant in its current condition until February 4, 2011, so that Plaintiff could take video and pictures of the restaurant in its infringing form. However, Plaintiff complains that the Defendants painted a few test patches of new colors on the wall prior to the pictures. (Pl.'s Br. at 11).

There is little question that the change in the appearance of the restaurant fits the first, third and fourth criterion for the spoliation instruction: the appearance was within the Defendants' control, it was ultimately changed before evidence could be taken, and Defendants knew that Plaintiff wanted to take pictures of the restaurant. The only real question is about the intentionality of the conduct and the prejudice to the Plaintiff.

Plaintiff has suffered little prejudice from this action, and Defendants are minimally at fault for the issue. *See Kounelis*, 529 F. Supp. 2d at 519. First, Plaintiff has suffered minimal if any prejudice. Defendants' counsel represented that the test patches of a gold color were 2 feet by 1 foot, and were small compared to the size of the restaurant; Plaintiff has submitted no evidence to contradict this. As such, the jury will not have difficulty imagining the entire restaurant was orange rather than orange with two small test patches of gold on either the video or the pictures taken on the day of inspection. This is particularly true in light of Plaintiff's prior assertion before this Court that Mr. Jivani's use of gold is so similar to orange that for certain lightings and on certain computer screens, it will appear as orange. Further, Plaintiff is in possession of pictures of the restaurant prior to the change, so the evidence is somewhat cumulative. (Dolich Decl. at Ex. E).

Second, while Mr. Jivani was at fault for painting prior to the video and pictures, such fault was minimal because the painting was undertaken to comply with this Court's preliminary injunction order. Such conduct was not intentional. Thus, the fault and prejudice do not weigh in favor of a spoliation sanction and the Court will not order one.

After Plaintiff realized that Mr. Jivani had painted the test patches, Plaintiff requested the security surveillance video taken prior to the repainting, which the Defendants agreed to provide. Defendants claim that they were unable to save the video but cite no support for that statement. (Defs.' Br. at 11). As the Court acknowledged above, there is minimal prejudice to Plaintiff because the video that Plaintiff could have taken during the inspection would have been sufficient. However, the Court is not satisfied with Defendants' explanation and finds it highly suspect. Indeed, after having represented that they had the video, Defendants somewhat lamely state that they were unable to save the video. (*Id.*). As such, the Court orders Defendants to

provide it with a full, sworn explanation of what happened to the surveillance video from each person involved in its preservation. If the Court is not satisfied with that explanation, it will conclude that the noncompliance is intentional and grant a spoliation inference.

### 2. Mr. Jivani's Old Facebook Pages

Plaintiff asks for a spoliation sanction as a result of Mr. Jivani's failure to preserve his Facebook pages in their original state – in other words, Plaintiff wanted PDFs of these pages prior to their being taken down. (Pl.'s Br. at 5-6). However, Plaintiff does not dispute that Facebook took these pages down because of its own take-down request. (*See* Dolich Decl. at Ex. B). To hold Defendants responsible for this subsection of pages would be unjust.[1]

Plaintiff also requests that the Court create an inference of spoliation based upon Mr. Jivani changing his profile picture on Facebook from a picture displaying the infringing trade dress without preserving that evidence. Defendants, for their part, claim that Plaintiff is in possession of all relevant posts prior to the change. Both parties agree that changing the user's Facebook profile picture changes the picture associated with each and every post that user has made in the past.

There is little question that the evidence fulfills the third requirement, but the other requirements are at issue.

Defendants argue that the Court should not impose a spoliation inference because the website was public and Plaintiff could have printed the website itself. This seems to be directed at the first requirement, that the discovery be in Defendants' control. However, Courts in this district have still found public websites to be within the control of parties who own them. *Arteria Property Pty Ltd. v. Universal Funding V.T.O., Inc*., 2008 WL 4513696 at *5 (D.N.J.

---

[1] The fact that it was not *legally* improper for Plaintiff to serve this notice (as acknowledged in this Court's prior opinion), does not undermine the fact that it was the primary and but-for cause of the spoliation.

2008).  Further, this is an attempt to "pass the buck" to Plaintiff to print websites that Defendants are obliged to produce.  Given that Defendants have a discovery obligation to produce them and that only Defendants knew when the website would be changed, it is more appropriate for Defendants to have that burden.  Thus, the Court concludes that the first factor, Defendants' control, is present.

The presence of remaining two factors is less than clear.  As to the forseeability of the discoverability of the evidence, the Court notes that the change of a profile picture on Facebook is a common occurrence.  Active users often change their profile pictures weekly.[2]  Therefore, it is hardly surprising that Mr. Jivani has changed his profile picture during the pendency of this litigation.  Further, while Mr. Jivani was on notice that he had to preserve evidence, it would not have been immediately clear that changing his profile picture would undermine discoverable evidence.  As such, the Court determines that this spoliation was unintentional; however, it nonetheless concludes that the loss of this evidence is somewhat prejudicial to Plaintiff.  *See Mosaid Tech., Inc. v. Samsung Elec. Co., Ltd.*, 348 F.Supp.2d at 336.

Given these considerations of fault, the Court determines that a less imposing alternative is the best solution.  Mr. Jivani must to coordinate with Plaintiff's counsel to change the picture back to the allegedly infringing picture[3] for a brief time so that Plaintiff may print whatever posts it thinks are relevant – such action shall not be considered an additional act of infringement.  The Court however, determines that it is incumbent on Plaintiff to, during the appointed time, print

---

[2] Further, the Court notes that it may even be somewhat misleading to have printouts of Defendant's posts with the infringing picture, as if they always appeared that way.  Indeed, it is likely that many posts existed for a substantial portion of their lifetime without the allegedly infringing photograph.  This is an issue that can be resolved in the proper questioning of witnesses.

[3] These photographs have not been destroyed, they been attached in several PDFs to this Court.  It would be a simple process to recover the photograph from those PDFs.  Then, Plaintiff may print the posts it thinks are relevant to the case.

such posts as it thinks are necessary to make its case. Thereafter, Mr. Jivani must immediately change his profile picture back to his noninfringing picture.

### 3. *Documents from Defendants' Website*

Plaintiff complains that it does not have a copy of the Defendants' website showing what the restaurant looked like prior to its repainting. Defendants respond that Plaintiff is in possession of pictures showing the restaurant prior to repainting, which are sufficient for Plaintiff to make its case. Again, the first, third, and fourth elements of the test are met. The question revolves around the second element, whether such evidence was destroyed intentionally or negligently, and what prejudice accrued to Plaintiff as a result.

Essentially, this is Plaintiff's complaint about Defendants' repainting prior to the inspection again. As discussed, Plaintiff had the opportunity to take pictures and video of the restaurant with a minor change. The Court does not know whether Plaintiff took advantage of that opportunity but, as discussed, the minor change in appearance was not very prejudicial to Plaintiff (particularly in light of the fact that Plaintiff has maintained that the gold color of the test patches is similar to the original orange). Consequently, Plaintiff suffered minimal prejudice.

However, the Court concludes that it is implausible that Mr. Jivani has no other electronic copies of these pictures on his hard drive or in emails to his web developer, etc. As such, Mr. Jivani is directed to search his home computer and any other computers he frequently uses and disclose any pictures he has of the restaurant prior to its repainting. The Court directs Defense counsel to remind Mr. Jivani of the consequences of destroying evidence before a tribunal.

The Court also determines that, without the printout of the website, the evidence will be insufficient to show that the website itself embodied pictures of the infringing restaurant and substantial prejudice has accrued to Plaintiff's ability to show that website itself infringed its trade dress.  As such, on this limited issue, the Court will grant a spoliation instruction unless Defendants produce an image of the portion of the website that included the photographs within one week of the order accompanying this opinion.

### 4. *Annual Report*

Plaintiff claims that a spoliation inference should result from Defendants' failure to provide its 2010 annual report.  Plaintiff requested the report to confirm Defendants' representation that *Rasik* Jivani was no longer a shareholder of the corporation because he had transferred the stock to *Niraj* Jivani.  Defendants claimed that they were unable to produce the report because it was no longer in their possession, despite the fact that they filed it during the pendency of this litigation.  (*See* Doc. No. 59, Ex. A, p. 1).  Defendants did provide documents related to the transfer of stock and stock certificates and corporate bylaws.  (Defs.' Br. at 12).

It does appear that Defendants were at the very least grossly negligent in failing to keep a copy of a report that they agreed to provide to opposing counsel and the Court.  *Mosaid Tech.,* 348 F.Supp.2d at 336 ; (*See* Doc. No. 57-1, ¶3).  However, apparently this is a public document available from the New Jersey Secretary of State.  As a result, the Court cannot see any prejudice that accrues from the failure to produce it – it is still available to both parties.

Indeed, the Court observes that it would have been easier for Plaintiff to request the filing than to draft this portion of the motion.  The Court further observes that it would have been easier for Defendants to request the filing than to respond to this portion of the motion.  Given the lack of prejudice to Plaintiff, the Court finds that a spoliation sanction is inappropriate,

despite Defendants' fault in not preserving their copy of the report. *See Kounelis*, 529 F. Supp. 2d at 519.

However, counsel for Defendants is directed to request the report from the Secretary of State and provide it to Plaintiff if it has not already so provided.

### 5. *Emails Between Mr. Jivani and the Web Developer*

According to Mr. Jivani's testimony, in October of 2011, Mr. Jivani hired a web developer for his website. Mr. Jivani, in failing to comply with this Court's preliminary injunction order, alleged that he was unable to contact the developer to put the disclaimer on the website and change the color. (4/4/11 tr. at 12-13). Plaintiff requested the emails between Mr. Jivani and his web developer to confirm that he did indeed hire the developer as of October. (Pl's. Br. at 14). Plaintiff asserts that Defendants never produced the emails. Defendants claim that all of the emails in their possession were produced and that all other communication took place in person or by telephone.

The emails produced consist of one exchange, where, on February 8, 2011, Mr. Jivani's web developer sent him a copy of the image of his home page prior to adding the disclaimer:

> Hi Niraj,
>
> As per your *phone request*, Please see your website's home page's html file, in the attachment. (Before adding the disclaimer part in the 'Home Page').
>
> Best Regards,
>
> Dr. Hema, Phd.
> Nadiyam Technologies, Inc.

(Dolich Decl. at Ex. G) (emphasis added). Mr. Jivani did not reply to the substance of this email, but replied on a related topic on March 16, 2011 (and immediately forwarded the reply email to counsel):

> Hema I have *called* you on March 3rd and 4th to change the colors[.]  I am on a court order [as] I have told you before . . . you MUST change the color[.] [T]his is horrible service being a few weeks that have gone by and no action has been taken to change the colors!

(*Id.*) (ellipsis in original, emphasis added).

There is no doubt that Dr. Hema Latha's email and Niraj Jivani's email reflect that telephone conversations had taken place between the two of them.  As such, if the emails have not been altered or somehow fabricated, it is clear that *some* communication took place by telephone.  Therefore, there may be no emails to be had.

However, there may be emails that were not produced or deleted.  It seems suspicious that a person with as active an online persona as Mr. Jivani only ever sent one email to his web developer, an email happens to cast him in a positive light.  Indeed, the Court wonders how Dr. Latha came into possession of the photographs that were allegedly posted on the website if there were no emails or other electronic communication between the two.[4]  Further, there are relatively easy ways to confirm these questions that do not require a spoliation sanction at this juncture.

In order to confirm whether Mr. Jivani sent other emails, the Court directs Defendants as follows:

> (1) Mr. Jivani shall allow his counsel to conduct a search of each of his email accounts, particularly "katirollandplatters@gmail.com" for emails from his web developer; defense counsel shall conduct such a search and turn over any emails procured;[5]
>
> (2) Mr. Jivani will request, via a signed request communicated through counsel, that Dr. Hema Latha forward to defense counsel directly, any emails that Mr. Jivani and Dr. Latha have exchanged, assuming he has not deleted them;

---

[4] It would have been possible to transfer such things in person.  It is also possible that the pictures were on the website prior to Dr. Latha starting his work with the website.  However, both of these possibilities seem less likely than an email.

[5] *See* Local Civil Rule 26.1(d)(1).  The Court also notes that "archive" is the primary email management function on "Gmail."  As such, it is unusual though not unheard of, for users to actually delete emails.

>   (3) Mr. Jivani shall have no contact, except through counsel, with Dr. Latha until such time as Dr. Latha has responded to the request for emails;
>
>   (4) Mr. Jivani, with the assistance of counsel, is to request phone records for each phone on which he made these calls for the months of October, 2010, and February and March of 2011 to confirm Mr. Jivani's alleged calls to Dr. Latha, to be delivered, if possible, directly to his counsel; such records shall be produced to the Court with appropriate redactions of calls not to Dr. Latha.

Counsel for the Defendants shall report every week to Judge Bongiovanni by a brief letter submission on the progress of these investigations and file, as an attachment, any resulting emails or phone records, appropriately redacted or under seal. Counsel may choose the day that he will consistently place such a letter on the docket. If no emails are recovered and Mr. Jivani is unable to produce records of phone calls or text messages to Dr. Latha (or alleges that such phone calls were made on the phones of any third parties or pay phones), the Court will consider sanctions against him. As of now, the existence of such emails is too hypothetical to impose sanctions.

### 7.     *Defendants' New Facebook Page*

Plaintiff argues that Defendants made a new Facebook page and did not disclose its existence in a discovery response. The Court agrees that Defendants should have disclosed its existence, but because Plaintiff has found the page independently and Defendants created the page in order to comply with this Court's preliminary injunction, sanctions are not appropriate. *See Kounelis*, 529 F. Supp. 2d at 519 (prejudice to discovering party considered when imposing sanctions).

### 8.     *Financial Documents*

Plaintiff requested that Defendants produce restaurant sales reports as well as other financial data. Plaintiff does not complain about the production of many of these items.

However, Plaintiff does complain that it has not received the point of sale reports, hand logs for cash transactions, that the corporation's tax returns were unsigned, the corporation's bank account statements redacted several ATM transactions (which may be relevant for piercing analysis), and that Defendants did not produce a copy of their insurance policy.

Defendants respond that the proprietary point of sale software has created problems for such production, that counsel is investigating the redaction to the bank account statements, and that they did produce the copy of the insurance policy. Defendants make no representations about the hand logs or tax returns. Nor do Defendants argue that the requests are in any way overbroad.

The Court finds that these are run-of-the-mill discovery issues, on which the parties should confer to resolve. The Court does not believe a sanction or order compelling production is appropriate at this juncture. There has yet to be a litigation in which every document was produced in a timely fashion. The Court also sees no reason why Defendants must produce electronic records of their bank accounts to Plaintiff or need bear the cost of putting the data into a spreadsheet. Defendants' counsel shall address each of these discovery issues in his weekly report until they are resolved.

### 9. *Deposition of Niraj Jivani*

While both parties agree that Plaintiff will have another opportunity to depose Niraj Jivani, Plaintiff argues that it should be compensated for the costs of the additional deposition. Plaintiff suggests that this is justified because Defendants were late in the production of several items, including their insurance policy, prior to Mr. Jivani's deposition. The Court disagrees.

As suggested by Defense counsel, the need for a supplemental deposition was also necessitated by Plaintiff's insistence on taking Mr. Jivani's deposition only a few weeks after

new counsel arrived on the case, without the opportunity for that counsel to come up to speed with the discovery requested. Further, it appears that Plaintiff has four more hours of questions, not all of which can be related to the insurance policy. As such, Plaintiff would have had to schedule an additional day of deposition anyway. Thus, the Court awards no fees for the additional deposition.

### 10. Counsel Are Directed to Conduct Themselves with the Collegiality and Good Faith that is Befitting of New Jersey Attorneys

The Court reminds counsel that attorneys in this jurisdiction are expected to conduct themselves with professionalism, to creatively find solutions to common problems, and to cooperate with each other. The email and other correspondence that has appeared before the Court do not reflect these high standards. Emails accusing opposing counsel of ethical violations, resistance to simple requests, attempts to pass responsibility to the other party for simple discovery requests, and inflexibility are reflected in many recent communications in this case. (*See, e.g.*, Dolich Ex. I; Doc. No. 114; Doc. No. 117; Doc No. 108-2; Doc. No. 118; Doc. 129 Ex. 2). The Court also reminds the parties that their attempts to pass the burden of discovery to each other often result in more work in emails than the work it would take to obtain the document themselves.

The Court understands that there is animosity between the parties. The testimony at the preliminary injunction hearing was enough to make that abundantly clear. However, despite the animosity between their clients, attorneys before this Court are expected to confer in *good faith* prior to bringing issues before the Court.

## III. CONCLUSION

      For the foregoing reasons, the Court grants in part and denies in part the request for spoliation sanctions and grants certain requests for the production of documents. The Court files an appropriate order concurrent with this opinion.

Dated: August 3, 2011

                                                  /s/ Garrett E. Brown, Jr.
                                       GARRETT E. BROWN, JR., U.S.D.J.