NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE KATIROLL COMPANY INC., | |
| Plaintiff, | Civil Action No. 10-3620 (JAP) |
| v. | **OPINION** |
| KATI ROLL AND PLATTERS INC., | |
| Defendant. | |

PISANO, District Judge:

Plaintiff, The Katiroll Company, Inc., brought this action on March 3, 2010, against Defendant Kati Roll and Platters, Inc., alleging service mark infringement, trade dress infringement, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 [docket entry no. 1]. Plaintiff filed an Amended Complaint on February 14, 2011, adding Defendants Niraj Jivani and Rasik Jivani [docket entry no. 75]. Currently before the Court are five motions: 1) Defendant Rasik Jivani's Motion for Summary Judgment [docket entry no. 201]; 2) Plaintiff's Cross-Motion for Partial Summary Judgment for Infringement and to Pierce the Corporate Veil against Rasik Jivani [docket entry no. 217]; 3) Plaintiff's Motion for Partial Summary Judgment on Defendants' Invalidity Defenses [docket entry no. 202]; 4) Defendants Kati Roll and Platters, Inc., and Niraj Jivani's Motion to Compel Plaintiff to Comply with Consent Orders [docket entry no. 215]; and 5) Plaintiff's Cross-Motion to Hold Defendants Kati Roll and Platters, Inc., and Niraj Jivani in Contempt [docket entry no. 223]. The Court decides these Motions without oral

1

argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant Rasik Jivani's Motion for Summary Judgment will be granted, Plaintiff's Cross-Motion for Partial Summary Judgment will be denied, Plaintiff's Motion for Partial Summary Judgment will be granted, Defendants' Motion to Compel will be granted, and Plaintiff's Cross-Motion for Contempt will be denied.

I.     **Background**

Plaintiff, The Katiroll Company, Inc., and Defendant, Kati Roll and Platters, Inc., are both in the business of selling katirolls, a type of Indian street food. The Plaintiff owns United States Service Mark Registration No. 3,352,040 ("the Mark") for The Katiroll Company, for restaurant and carry-out restaurant services in Class 43, and rights in unregistered trade dress. Plaintiff opened its first location in Manhattan in June 2002, and currently operates two restaurants in Manhattan and a third in London. Plaintiff's stores are decorated in an orange color scheme, including orange signs and menus, and include an exposed brick wall and brown ceramic floor tiles. They primarily serve take-out customers, and thus have an open glass front with a counter and limited seating. Plaintiff's restaurants have received substantial acclaim in the press and enjoy positive exposure in print and online. The trademark registration was issued on December 11, 2007.

Payal Saha is the President of Plaintiff company. She met with Defendant Niraj Jivani and Jivani's uncle to discuss their proposal to open a branch of The Katiroll Company in New Jersey, but ultimately rejected this proposal. Niraj Jivani nevertheless proceeded with his plan to open a restaurant in New Brunswick, New Jersey, naming it Kati Roll and Platters, Inc. The space that Jivani leased is also a small open store front with a countertop and an exposed brick

wall in the interior.  The interior was painted "burnt orange," and the Defendant restaurant's sign consisted of white lettering on an orange background.  In addition to these similarities, the Plaintiff has put forth evidence to demonstrate actual confusion: customers and others have shown that they believed the Defendant and Plaintiff restaurants were affiliated through phone, email, and in-person inquiries directed toward Plaintiff; online restaurant reviews and comments; and personal inquiries directed toward Saha, the President of Plaintiff company.  Jivani himself created confusion by either posting himself or providing the means for another to post online publicity for the opening of an "original or official Kati Roll Company" in New Jersey.

Plaintiff brought this action on March 3, 2010 against the Defendant restaurant, alleging service mark infringement, trade dress infringement, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051.  Plaintiff added individual Defendants Niraj Jivani and Rasik Jivani on February 14, 2011.  On February 1, 2011, the Court granted Plaintiff's Motion for a Preliminary Injunction [docket entries no. 72, 73], finding that Plaintiff was likely to succeed on the merits of its claim for trade dress infringement and unfair competition, but not on its claim for trademark infringement.  Thus, the Defendant restaurant was enjoined from using Plaintiff's trade dress, including from using the color orange, and ordered to explicitly disavow any connection with the Plaintiff on its menus, websites, and advertising materials.

This case began as an infringement action by a successful New York-based chain restaurant against a single small competitor restaurant in New Jersey, but has nevertheless resulted in over two years of highly contentious litigation.  This is due in significant part to what the Court views as overzealous advocacy on the part of the Plaintiff.  The subject of Defendants' Motion to Compel and Plaintiff's Cross-Motion for Contempt, discussed in more detail below,

serves to illustrate this conclusion. Two consent orders issued in the spring of 2011 required Defendants to "park" their website until they changed they its color, and to remove their advertisement from the website scarletmenus.com until it included a prominent disclaimer. Over one year later, the Plaintiff has refused to allow Defendants to post revised advertising materials, forcing Defendants to file a Motion to Compel. Plaintiff's continued refusal and its Cross-Motion for Contempt is not based on the Defendants' failure to comply with the consent orders, but rather on the timeliness of compliance, unproven allegations of noncompliance, and on new allegations unrelated to the consent orders. Some of the cited infractions include transmitting photos of the restaurant and menus to the Plaintiff one day late, and underpaying the Plaintiff's attorney by ten dollars. The Court does not condone any non-compliance by the Defendants, but finds the Plaintiff's obstructionist tactics to be unjustified. The sheer number of motions that have been filed in this matter are not consonant with the relatively straightforward facts of this case, and in fact have delayed its resolution significantly.

## II.     Summary Judgment Standard

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether or not a fact is material is determined according to the substantive law at issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Celotex*, 477 U.S. at 324. The non-moving party must then offer

admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Defendant Rasik Jivani's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment for Infringement and to Pierce the Corporate Veil

Defendant Rasik Jivani is the father of Niraj Jivani. He has filed for summary judgment, arguing that he has never been actively involved in his son's business, and in particular that he never participated in any of the alleged infringing activities. The Plaintiff cross-moved for summary judgment, asserting that Rasik Jivani directly participated in the Defendant restaurant's infringement or may be held secondarily liable under the Lanham Act, and that his relationship to the business is such that he may be found personally liable for the actions of the corporation by piercing the corporate veil.

Rasik Jivani is self-employed as a medical doctor with a solo family practice, and contends that he was not actively involved in the business or marketing decisions of the

Defendant restaurant, nor its day-to-day operations. Rasik helped his son obtain financing for the restaurant by co-signing for a line of credit. He held the line of credit checkbook, and wrote checks to pay for some of the restaurant's start-up costs. He also occasionally loaned money to the business, but contends that this was only at his son's request, and that he was not involved in the business decisions underlying these purchases. Rasik's name appears on the lease, the contract with the architect, and the restaurant's American Express card application. Rasik was not present at the negotiations between Niraj and the architect. The architect's work pursuant to this contract included piping, lighting and partitions, did not include signage, décor or design, and lasted until November 2007. The restaurant makes the credit card and rent payments from its bank account. This account was with Chase Bank until 2010, and Niraj was the principal signator. Since 2010, the restaurant has used a Bank of America account and Niraj has been the only signator for that account.

  When the business was incorporated in December 2007, Niraj Jivani listed his father as a Registered Agent at the family home address, and listed himself and his father as members of the First Board of Directors. Rasik contends that he did not know he was listed as a Board Member. He was listed as a shareholder during 2008 and 2009, but withdrew on January 1, 2010, transferring his stock to Niraj. Plaintiff contends that this transfer was ineffective because Rasik failed to sign the back of the stock certificate, but has presented no evidence that Niraj or Rasik did not intend to consummate the transfer. The corporate filing for 2009 and 2010 lists Niraj as the Registered Agent and the only Officer/Director. Rasik Jivani signed the restaurant's 2009 tax returns as the company's "President" while his son was in rehab in California, but Defendants contend that Niraj continued to run the business remotely during that time.

The Plaintiff argues that Rasik is liable for infringement under the Lanham Act both directly and under theories of secondary liability: joint tortfeasor liability, contributory infringement, and vicarious liability. However, "participation in activities merely related to the infringing act is not enough" to find personal liability for the infringement. *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 503 (E.D. Pa. 2006), *aff'd* 242 Fed. Appx. 833 (3d Cir. 2007) (citing *Omega, S.A. v. Giftland, Co.*, Civ. No. 03-5808, U.S. Dist. LEXIS 17043, at *3 (D.N.J. Aug. 11, 2005)). "[A]lthough 'a person who knowingly and significantly participates in another's act of trademark infringement is himself guilty of infringement,' there does not appear to be any aider and abetter liability under the Lanham Act." *Id.* (quoting *Omega*, Civ. No. 03-5808, at *3). In *Donsco, Inc. v. Kasper Corp.*, on the other hand, the Third Circuit found that personal liability for infringement was warranted against the "central figure" of the infringing entity who "authorizes and approves" the infringing act. *See also Chanel, Inc. v. Italian Active Wear of Fl., Inc.*, 931 F. 2d 1472, 1478 (11th Cir. 1991) ("The individual liability standard does not ask whether the individual participated . . . in some infringing acts, instead it asks if he actively participated as a moving force in the decision to engage in the infringing acts and otherwise caused the infringement as a whole to occur.").

Evidence that Rasik Jivani financially supported his son's business—even by signing the checks that purchased allegedly infringing materials—is insufficient to warrant granting Plaintiff summary judgment on Rasik's personal liability for alleged infringement by the business. Plaintiff argues that the Lanham Act creates strict liability for infringement, and an affirmative duty not to cause confusion. This is irrelevant to the question of whether any such duty attached to Rasik Jivani in the first place. The evidence shows that Niraj made all of the design and

marketing decisions that constitute the alleged infringement, and that Rasik was not involved enough in the business to be held responsible for the actions of the corporation.

Plaintiff also argues that this case is analogous to cases where secondary liability was found under the Lanham Act.  However, the Plaintiff did not plead that Rasik Jivani was liable under any such theory of secondary liability.  In any event, the facts in this case do not support it; all of the cited cases discuss imposing liability on parties with much more direct involvement in the alleged infringing acts.  For example, Plaintiff argues that *American Telephone and Telegraph Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994), supports joint tortfeasor liability for Lanham Act infringement in this case.  In fact, that case simply held that common-law theories of secondary liability are available under the Lanham Act, and remanded the matter to the district court to determine whether or not a corporation and its president could be held responsible for the infringing actions of its employees under a theory of common-law agency.  Here, neither the corporation nor Niraj Jivani ever acted as Rasik Jivani's agent.  The Plaintiff's factual averments do not show that Niraj held himself out as an agent of his father, but rather that he acted on behalf of the Defendant corporation.   Rasik's actions also do not meet the elements of contributory infringement as laid out in *AT&T*:

> [I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible . . . .

*AT&T*, 42 F.3d at 1432 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)).  The Third Circuit recognized that secondary liability is not limited to the relationship between manufacturer and distributor, but Rasik Jivani certainly did not intentionally induce infringement, and neither did he take any action akin to a manufacturer knowingly supplying its

8

product to one who is engagement in infringement.  In a similarly distinguishable case, the landlord found to be liable in *Hard Rock Café Licensing Corp. v. Concessions Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992), was directly involved in selling and promoting the infringing products sold on its properties.

The Supreme Court has also "explicitly . . . held that secondary liability for trademark infringement must be drawn more narrowly than secondary liability for copyright infringement," under which a defendant may be found "vicariously liable . . . if it has 'the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *AT&T*, 42 F. 3d at 1441. (citing *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984)) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).  Rasik Jivani's involvement in the alleged infringement would likely not even meet the lower threshold for copyright infringement.

Plaintiff also argues that Rasik may be held personally liable for the actions of the corporation by piercing the corporate veil.  Plaintiff believes that the corporate veil may be pierced because Rasik comingled corporate and personal funds and expenses, because he failed to observe corporate formalities, and because he acted as an officer of the corporation.  However, piercing the corporate veil is a remedy that is granted sparingly pursuant to a case-by-case analysis.  Comingling of funds and the failure to observe corporate formalities are only two of the factors a court may consider in making a case-by-case analysis.  These factors also happen to be common in small, closely-held corporations.  Moreover, the failure to observe corporate formalities in this case only serves to highlight Rasik's lack of involvement in the business.  He

had no duties as a corporate officer or shareholder, and has terminated both of these nominal positions.

Furthermore, there is no evidence that Rasik shared an identity of interest with the corporation. In order to prove alter ego liability, a plaintiff must meet a "notoriously difficult" burden, overcoming by clear and convincing evidence the presumption that two separate entities exist. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001); *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1522 (3d Cir. 1994). There is much evidence that Rasik paid various start-up costs for the restaurant, and that he was listed as a board member and shareholder (the exact date at which his status as a board member was terminated is a matter of some dispute). If financial support, shareholding, and board membership were sufficient to pierce the corporate veil, the limited liability provided by incorporation would be meaningless. There is no fraud or exceptional circumstance that would justify piercing the corporate veil in this case. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). Thus, Plaintiff's summary judgment motion will be denied.

Considering all facts in the light most favorable to the non-moving party, the Court finds that there is no issue of material fact relevant to the question of Rasik Jivani's personal liability. The evidence shows that Rasik was merely a passive financial supporter of his son's business venture, and that there is no basis for holding Rasik personally liable for the actions of the other Defendants. Plaintiff has pointed to specific instances of financial support provided by Rasik for his son's business, and to his former positions as board member and shareholder, but these facts are immaterial. Liability cannot be based on his own actions in furtherance of the infringement, because there is no evidence of such actions. Rasik Jivani is employed full-time as a medical

doctor, and there is no genuine factual dispute between the parties as to his lack of involvement in the business or marketing decisions of the restaurant.  Mere financial support, without any decision-making authority, does not create liability for infringement.  Liability also cannot be based on piercing the corporate veil.  As described above, Rasik's involvement in the business is not nearly at the level that would allow the Court to pierce the corporate veil.  Thus, the Court will grant Rasik Jivani's Motion for Summary Judgment.

## IV.  Plaintiff's Motion for Partial Summary Judgment on Defendants' Invalidity Defenses

Defendants have alleged affirmative defenses against the Plaintiff's infringement claim, seeking to attack the validity of Plaintiff's trademark.  Plaintiff owns United States service mark Reigstration No. 3,352,040, for The Kati Roll Company for "restaurant and carry-out restaurant services" in Class 43.  The mark was issued by the United States Patent and Trademark Office (PTO) on December 11, 2007, based on use dating back to June 2002.  The PTO's registration creates a presumption of validity that Defendants must overcome to prevail on their affirmative defenses.  15 U.S.C. §§ 1057(b), 1115(a).  The Court finds that the Defendant's allegations challenging the validity of the mark go to the ultimate issue of infringement, rather than to the mark's validity.  Thus, Plaintiff is entitled to summary judgment on these affirmative defenses.

Defendants challenge the validity of Plaintiff's mark primarily on the grounds that "kati roll" is a generic term that refers to a type of common Indian street food.  This challenge, however, belies the nuances of trademark registration.  Importantly, names including generic terms may meet the legal standard for registration.  "Courts classify the distinctiveness or conceptual strength of a mark as either (1) generic . . . ; (2) descriptive . . . ; (3) suggestive . . . ;

11

or (4) arbitrary or fanciful." *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 185 (3d Cir. 2010). Generic marks are never protected, and descriptive marks are only protected where they have acquired "secondary meaning" through the registrant's use. *Interstate Net Bank v. NetBank, Inc.*, 221 F.Supp.2d 513, 517-18, 525-26 (D.N.J. 2002). The PTO found that Plaintiff's mark was descriptive, and had also acquired distinctiveness, or "secondary meaning."

Defendants claim that the Plaintiff's mark is generic, or at most descriptive with no secondary meaning. In order to succeed in this defense, they must overcome a "strong presumption" that a PTO-registered trademark is not generic or descriptive. *Interstate Net Bank*, 221 F.Supp.2d at 517-18 (citing 15 U.S.C. § 1115(a)). Defendants claim that they can overcome this presumption, because generic or descriptive trademarks are subject to challenge and cancellation under the Lanham Act, 15 U.S.C. § 1064, and only become "incontestable . . . after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." *Fisons Horticulture, Inc., v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 .7 (3d Cir. 1994). However, the Plaintiff claims that the Defendants cannot meet their burden under the applicable presumption, not that the mark is incontestable. The Court finds that the Plaintiff's characterization of the facts prevails, and that Defendants' invalidity defenses cannot survive this Motion for Summary Judgment.

Defendants primarily attack the registration of the term "kati roll" as too generic because it is a type of food. This argument is legally flawed for two reasons. First, it ignores that the Plaintiff's mark is for restaurant services, and not for the type of food sold. Second, it fails to

12

consider the mark as a whole, which is "The Kati Roll Company." The meaning of the term "kati roll" is relevant to the validity of the mark, but that term does not displace the mark as a whole. The name "The Kati Roll Company" functions to identify a particular source of restaurant services for consumers, and thus has acquired secondary meaning. *See E.T. Browne Drug Co. v. Cococare Prods.*, 538 F.3d 185,198-99 (3d. Cir. 2008) (discussing secondary meaning; *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (same). The PTO found that this was true in registering the mark, and the Defendants do not present any conflicting evidence that is relevant to this determination.

The fact that consumers may understand a kati roll to be a generic type of food is not relevant to the validity of the mark itself. Whether "Kati Roll and Platters" is likely to cause consumer confusion with "The Kati Roll Company" goes to the ultimate issue of infringement: specifically, the scope of protection provided by Plaintiff's mark. Thus, Plaintiff is entitled to summary judgment on Defendants' invalidity defenses.

## V. Defendants Kati Roll and Platters, Inc., and Niraj Jivani's Motion to Compel Plaintiff to Comply with Consent Orders and Plaintiff's Cross-Motion to Hold Defendants Kati Roll and Platters, Inc., and Niraj Jivani in Contempt

On April 5, 2011, a consent order was entered which forbade the Defendants from displaying the Defendant restaurant website while such website continued to use Plaintiff's trade dress violation of the Preliminary Injunction Order. Another consent order of June 20, 2011 prohibited Defendants from advertising on the scarletmenus.com website until the parties could agree that the disclaimer was sufficiently prominent. Defendants have since obtained a new web designer to change the color of the website, and have proposed a green menu with a disclaimer

for advertisement, in order to conform with the Preliminary Injunction order of February 1, 2011. Defendants have brought this Motion to Compel compliance with these two orders, claiming that the Plaintiff has refused to allow Defendants to use the new website and advertisement until they change the name of their restaurant. Plaintiff brings a Motion for Contempt in response, claiming that Defendants have not complied with the Preliminary Injunction and thus have not earned the right to re-post their website or advertisements.

There is no question that the Defendants were not required by the Preliminary Injunction Order to change the name of their restaurant, or that such a name change was required by either of the consent orders. Thus, any claim that Defendants have not complied on that basis must fail. Plaintiff, however, argues that the Defendants are still in violation of the orders. For example, Plaintiff claims that Defendants have created new facebook pages without the disclaimer required by the Court's orders, that the menus in the restaurant do not do not contain the required disclaimers, and that they have not demonstrated to the Plaintiff or to the Court that the proposed new website and menus will be in conformity. Plaintiff also seeks to punish the Defendants for its tardiness in complying with the orders, regardless of their current state of conformity with those orders. Finally, Plaintiff claims that Defendants are in contempt for their failure to make timely payments to Plaintiff's attorney as ordered in the June 20, 2011 consent order.

The Court finds that Defendants have demonstrated "substantial compliance" with the relevant orders, and thus the Motion for Contempt will be denied, and the Motion to Compel will be granted. The Defendants also must be allowed to "unpark" their revised website and post appropriate new advertisements. The Defendant has offered proof to the Court that it has endeavored to comply with the consent orders and to obtain the Plaintiff's approval of the

required changes regarding the website and online menu advertisement.  Plaintiff refuses to grant such approval based on the timeliness of compliance, new allegations that the Defendant continues to create confusion, and the unrelated issue of the restaurant's name.  The Court finds that these allegations are unrelated to the specific terms of the consent orders.  Thus, Plaintiff has not justified its refusal to allow Defendants to re-post their new advertising materials.  Defendants may advertise their services to the public online in the limited manner contemplated by the Preliminary Injunction Order.

The Court further finds that Defendants' proof of substantial compliance, and the relative insignificance of Plaintiff's allegations, must result in the denial of Plaintiff's Motion for Contempt.  The Plaintiff's allegations are either unrelated to the Preliminary Injunction, unsubstantiated, or simply insufficient in severity to justify holding the Defendants in contempt.

## VI.     Conclusion

For the foregoing reasons, Defendant Rasik Jivani's Motion for Summary Judgment will be granted, Plaintiff's Cross-Motion for Partial Summary Judgment will be denied, Plaintiff's Motion for Partial Summary Judgment will be granted, Defendants' Motion to Compel will be granted, and Plaintiff's Cross-Motion for Contempt will be denied.  An appropriate Order follows.

  /s/ Joel A. Pisano        
JOEL A. PISANO
United States District Judge

Dated: July 26, 2012